JUDGE ENGELMAYER**UNITED STATES DISTRICT COURT** 13 CV 3845
**SOUTHERN DISTRICT OF NEW YORK**



CHARLES MILLER, On Behalf of Himself and
All Others Similarly Situated,

Plaintiff,

v.

STERLING BANCORP, LOUIS J. CAPPELLI,
ROBERT ABRAMS, JOSEPH M. ADAMKO,
FERNANDO FERRER, ALLAN F.
HERSHFIELD, HENRY J. HUMPHREYS,
JAMES B. KLEIN, ROBERT W. LAZAR,
CAROLYN JOY LEE, JOHN C. MILLMAN,
EUGENE T. ROSSIDES, and PROVIDENT
NEW YORK BANCORP,

Defendants.

Civil Action No.

**INDIVIDUAL COMPLAINT FOR
VIOLATION OF SECTIONS 14(a) AND
20(a) OF THE SECURITIES EXCHANGE
ACT OF 1934 AND CLASS CLAIM FOR
BREACH OF FIDUCIARY DUTIES**

**Demand for Jury Trial**

Plaintiff Charles Miller ("Plaintiff"), by his attorneys, for his complaint against
defendants, alleges upon personal knowledge as to himself, and upon information and belief as to
all other allegations herein, as follows:

1.     This is an action brought by Plaintiff individually for violations of §§14(a) and
20(a) of the Securities Exchange Act of 1934 and as a class action for breach of fiduciary duties
on behalf of the common stockholders of Sterling Bancorp ("Sterling" or the "Company") in
connection with the proposed acquisition of the publicly-owned shares of Sterling's common
stock by Provident New York Bancorp ("Provident") as detailed herein (the "Proposed
Transaction").

2.     On April 4, 2013, Sterling and Provident issued a joint press release announcing
that the Company had entered into a definitive Agreement and Plan of Merger, dated April 3,
2013 ("Merger Agreement") pursuant to which Provident will acquire all of the outstanding
stock of Sterling in a transaction valued at approximately $360 million.

3.     Pursuant to the terms of the Merger Agreement, Sterling stockholders will receive 1.2625 shares of Provident common stock for each share of Sterling common stock they own (the "Exchange Ratio"). Based on Provident's April 3, 2013 closing price, the per share value of the Proposed Transaction was approximately $11.24 per Sterling share, which represents a mere 11% premium offered to Sterling's stockholders.

4.     On June 4, 2013, in an attempt to secure stockholder approval of the Proposed Transaction, Provident filed a Form S-4 joint proxy statement/prospectus with the Securities and Exchange Commission ("SEC") recommending that Sterling stockholders approve the Proposed Transaction ("Registration Statement"). The Registration Statement omits and/or misrepresents material information about the process leading up to the Merger Agreement and the financial analyses performed by the companies' financial advisors, which are ostensibly designed to permit stockholders to assess the terms of the Proposed Transaction.

5.     The omitted and/or misrepresented information is material to Sterling's stockholders' impending decision regarding whether or not to vote in favor of the Proposed Transaction. Plaintiff is thus threatened with irreparable harm and seeks injunctive relief to ensure that defendants cure their breaches of §§14(a) and 20(a) so that he may vote on the Proposed Transaction with all material information.

6.     Moreover, the Proposed Transaction is the product of a fundamentally unfair process that is designed to ensure that Sterling is sold to Provident at terms which favor Provident and certain insiders of Sterling, but are detrimental to Plaintiff and all other Sterling stockholders. Sterling failed to perform any market check prior to negotiating exclusively with, and ultimately selling to, Provident at an unfair Exchange Ratio. Additionally, the Merger Agreement contains certain preclusive deal protection devices which, such as a termination fee

2

provision and a "No Solicitation" provision, ultimately function to preclude any competing or superior bids for the Company.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the claims asserted herein pursuant to §27 of the Securities Exchange Act of 1934 and 28 U.S.C. § 1331 for violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder. Each defendant conducts business in and/or maintains operations in this District, and, in the case of the individuals, has sufficient minimum contacts for this Court to exercise jurisdiction. For example, the individuals attended meetings and approved the Registration Statement at issue in this litigation in this District.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Sterling is incorporated in New York and maintains its principal executive offices at 650 Fifth Avenue, New York, New York and is therefore a resident of this District, as are many of the individual defendants who are officers and/or directors of Sterling who reside or work in this District.

## PARTIES

9.     Plaintiff Charles Miller is, and has been at all relevant times, the owner of the common stock of Sterling.

10.     Defendant Sterling is a New York corporation. According to the press release announcing the Proposed Transaction, "Sterling provides clients with a full range of depository and cash management services and a broad portfolio of financing solutions—including working capital lines, accounts receivable and inventory financing, factoring, trade financing, payroll funding and processing, equipment financing, commercial and residential mortgages and

mortgage warehouse lines of credit." Shares of Sterling common stock trade on the NYSE under the symbol "STL".

11.     Defendant Louis J. Cappelli ("Cappelli") currently serves as the Chairman of Sterling's Board of Directors (the "Board"). Cappelli has served on the Board since 1971 and has served as the Company's Chief Executive Officer ("CEO") since 1992.

12.     Defendant Robert Abrams ("Abrams") has served on the Board since 1999. Abrams served as the Bronx Borough President from 1970 to 1978.

13.     Defendant Joseph M. Adamko ("Adamko") has served on the Board since 1992. Adamko was previously the managing director of Manufacturers Hanover Trust Co., which is now J.P. Morgan Chase & Co, an affiliate of which served as one of the Company's financial advisors in the Proposed Transaction.

14.     Defendant Fernando Ferrer ("Ferrer") has served on the Board since 2002. Ferrer served as Bronx Borough President 1988 to 2002.

15.     Defendant Allan F. Hershfield ("Hershfield") has served on the Board since 1994.

16.     Defendant Henry J. Humphreys ("Humphreys") has served on the Board since 1994.

17.     Defendant James B. Klein ("Klein") has served on the Board since August 2012.

18.     Defendant Robert W. Lazar ("Lazar") has served on the Board since 2005.

19.     Defendant Carolyn Joy Lee ("Lee") has served on the Board since 2009.

20.     Defendant John C. Millman ("Millman") has served on the Board since 1988. Millman has served as President of Sterling since 1992 and as President and CEO of Sterling's subsidiary, Sterling National Bank, since 1987.

21.     Defendant Eugene T. Rossides ("Rossides") has served on the Board since 1989.

4

22.     Defendants Cappelli, Abrams, Adamko, Ferrer, Hershfield, Humphreys, Klein, Lazar, Lee, Millman and Rossides are referred to herein as the "Individual Defendants" or the "Board".

23.     Defendant Provident, according to the April 4 release, is a financial services firm that offers a complete line of commercial, business, and consumer banking products and services. Provident is a Delaware corporation with its principal executive offices in Montebello, New York.

## SUBSTANTIVE ALLEGATIONS

24.     Sterling, according to its website, is a New York City-based financial corporation with assets of $2.7 billion. The Company was founded in 1929 and provides clients with a full range of depository and cash management services and a broad portfolio of financing solutions – including working capital lines, accounts receivable and inventory financing, factoring, trade financing, payroll funding and processing, equipment leasing and financing, commercial and residential mortgages and mortgage warehouse lines of credit.

**The Proposed Transaction**

25.     On April 4, 2013, Sterling and Provident issued a joint press release announcing the Proposed Transaction, which stated in relevant part as follows:

> **MONTEBELLO and NEW YORK, NY— (April 4, 2013)** – Provident New York Bancorp (NYSE: PBNY) and Sterling Bancorp (NYSE: STL) announced today they have entered into a definitive merger agreement in a stock-for-stock transaction valued at $344 million, based on the closing price of Provident New York Bancorp common stock on April 3, 2013. The merger will create a combined financial services firm specializing in serving small-to-middle market commercial and consumer clients in the greater New York metropolitan area.
>
> In the merger, Sterling Bancorp shareholders will receive a fixed ratio of 1.2625 shares of Provident New York Bancorp common stock for each share of Sterling Bancorp common stock. Upon closing, Provident New York Bancorp shareholders will own approximately 53% of stock in the combined company; Sterling Bancorp shareholders will own approximately 47%. Combined, the

companies had annualized pro forma revenue of $257 million and $41 million in net income for the 2012 calendar year, and upon completion of the merger will have nearly $7 billion in assets. The merger is expected to generate approximately $34 million in fully phased-in annual cost savings or approximately 18% of the expected combined expense total. The merger is expected to be accretive to Provident New York Bancorp's earnings per share in 2014, excluding the impact of the potential revenue enhancement opportunities.

Provident New York Bancorp expects to raise $80 million through a debt offering prior to the closing of the transaction and anticipates using the net proceeds to fund a capital contribution to Provident Bank, redeem Sterling's trust preferred securities and for general corporate purposes.

26.    The press release added that the leadership team of the merged company, to be called Sterling National Bank, would consist of an amalgamation of the executives from Sterling and Provident. Provident's President and CEO, Jack Kopnisky ("Kopnisky"), will serve as CEO for the combined company and Luis Massiani ("Massiani") will serve as Chief Financial Officer ("CFO"). Sterling's Cappelli will serve as chairman of the combined company's board of directors.

27.    The press release further noted that the board of directors of the combined company will originally have 13 members, with seven members selected from Provident's directors and the remaining six (over half of the present Board) selected from Sterling's Board. Sterling's President Millman will be appointed to the board of directors and will serve as a senior advisor to the combined company. Thus, a majority of the Board will continue to hold significant positions with the combined company that will allow them to reap valuable benefits, creating an potential conflict of interest with those of the Company's public stockholders.

28.    Additionally, the Exchange Ratio will result in Provident stockholders owning approximately 53% of the combined company and Sterling stockholders owning the remaining 47% of the combined company.

29.    Moreover, significant synergies are expected to be achieved as a result of the Proposed Transaction.  The banks estimate synergies of $34 million per year, which represents savings of approximately 18% of the companies' combined operating expenses.  Massiani exclaimed that "[w]e have worked closely with Sterling management in determining these savings opportunities and are confident we will achieve these targets."  The Proposed Transaction, however, fails to adequately compensate shareholders for these synergies.

30.    Upon releasing its fourth quarter and full year 2012 earnings on January 24, 2013, Cappelli stated that "Sterling is well positioned for 2013" and further commented on future stockholder value as follows: "We believe that our ability to redeploy our assets, while generating revenue from a diverse and balanced range of sources, and serving the needs of customers in a vibrant marketplace with our dedicated team of talented professionals will continue to contribute to enhanced shareholder value going forward[.]"  However, Sterling's shareholders will be significantly diluted and will be unable to share in the expected future success to the same extent absent the Proposed Transaction.  Indeed, Sterling's net interest income for the full year 2012 was up 8% from 2011.  Similarly, the Company's pre-tax income was up 31% for the full year and 58% in the fourth quarter of 2012.

31.    Sterling and its Board failed to adequately shop the Company in order to ensure a fair process which would recognize the inherent value of Sterling.  Indeed, during the question and answer session of the merger presentation on April 4, 2013, Cappelli noted that the Proposed Transaction was negotiated directly with Provident.  When asked whether the Company was shopped to a broader audience beyond Provident, Cappelli reiterated that "[i]t was direct negotiation with Provident."  As a result of this failure to properly shop the company, Sterling stockholders will be deprived of the right to receive adequate consideration for their shares.

32.    Additionally, §8.2 of the Merger Agreement contains a termination fee provision which obligates Sterling to pay Provident a $13.25 million termination fee in the event that the Proposed Transaction is terminated in favor of a superior proposal, which represents approximately 4% of the equity value of the Proposed Transaction.

33.    Moreover, §6.12 of the Merger Agreement provides a "No Solicitation" clause which requires that each party agree that they:

> **will not**, and will cause its Subsidiaries and its and their officers, directors, agents, advisors and representatives (collectively, "Representatives") not to, **directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate inquiries or proposals with respect to, (ii) engage or participate in any negotiations with any person concerning, or (iii) provide any confidential or nonpublic information or data to, or have or participate in any discussions with, any person relating to, any Acquisition Proposal;**

34.    Additionally, each party, and their representatives, must "immediately cease and cause to be terminated any activities, discussions or negotiations conducted before the date of this Agreement with any person other than Sterling or Provident, as applicable, with respect to any Acquisition Proposal."

35.    These provisions are particularly egregious in this situation, given that Sterling has not sought to perform any market check to ensure that its shareholders receive adequate consideration for their shares of Sterling stock, who also do not have the right to seek dissenters' rights.   Indeed, Sterling negotiated exclusively with Provident and, by way of these deal protection provisions, has ensured that no alternative bidder will step forward and seek to top Provident's bid, thereby securing valuable benefits for certain officers and directors of the Company.

**The Materially False and Misleading Registration Statement**

36.    On June 4, 2013, Provident filed the Registration Statement which recommends that Sterling shareholders vote in favor of the Proposed Transaction.  The Registration Statement

8

omits and/or misrepresents material information about, among other things, the process that ultimately led to the signing of the Merger Agreement and the true value of Sterling both as a stand-alone entity and as Provident's merger partner.

37.     The Registration Statement demonstrates that Sterling never did, and never sought to, negotiate with any other potential acquirors, confirming ¶31 above.  Provident and Sterling negotiated exclusively with one another throughout the process.  The Registration Statement does note, however, that the Board considered:

> the availability of alternative transactions, including consideration of the following:
>
> - the fact that, in a consolidating industry, institutions with an interest in merging with another institution typically make that interest known;
> - the fact that, in the current regulatory environment, many institutions may not be able to obtain regulatory approval for a strategic transaction, such as a transaction with Sterling;
> - the attractiveness and strategic fit of Provident as a potential merger partner; and
> - the likelihood of an alternative transaction emerging.

38.     While the Board purportedly considered the factors listed above, the Registration Statement provides absolutely no explanation regarding why these speculative factors justify a complete failure to perform a market check to ensure Sterling shareholders receive proper value. Additionally, these factors generally rely on assumptions that could not possibly be tested without further action on the part of the Board.  For example, while Sterling may have assumed that any institution with interest in merging would typically make such interest known, the Registration Statement reveals no real rationale  to actively take steps to ensure that a more attractive offer from an alternative bidder would not possibly exist.  Of course, the word "typically" similarly assumes that Sterling knew that there will in fact be situations in which interest in an acquisition will not immediately be shared with another institution.  This ultimately

amounts to a shrug of the shoulders and a determination that "there probably was nothing else out there, maybe." The lack of information, and indeed, lack of action, casts doubt on whether the Board adequately and properly discharged their duties when determining whether to approve the Proposed Transaction.

39.     Similarly, the Registration Statement is materially false and misleading in that it fails to disclose the following information:

- When the parties began to discuss the consideration that would ultimately be received in the Proposed Transaction, how the Exchange Ratio was ultimately determined and whether there were negotiations regarding whether the Proposed Transaction would include a cash component;

- Any rationale regarding Cappelli's decision not to inform the Board about his preliminary discussions held with Provident until September of 2012. According to the background as laid out in the Registration Statement, Cappelli waited nearly three-quarters of a year before disclosing these discussions to the Board, while conversely, the Provident board of directors was advised of these discussions as early as April 2012

- The substance of the discussions between Cappelli and Provident during the early 2012 through September 2012 relating to a proposed business combination, including the financial terms, structure and employment issues discussed during this time frame; and

- When the parties began to consider the synergies to be realized as a result of the Proposed Transaction, how such amount derived and changed over time and how, if at all, this information affected the ongoing discussions/negotiation between Sterling and Provident.

These omissions render the Registration Statement materially misleading because this information would cast doubt on whether the Board properly discharged its duties to Sterling's shareholders and would be material to a shareholder's decision regarding whether to vote in favor of the Proposed Transaction. Additionally, with regard to synergies, this information is material to a shareholder's ability to determine whether the consideration offered is sufficient, including whether the amount changed over time and how it factored into the final analyses performed by the Company's financial advisors.

10

40. Furthermore, the Registration Statement fails to disclose the compensation received by Keefe, Bruyette & Woods, Inc. ("KBW"), one of Sterling's financial advisors, in the last two years. The Registration Statement discloses that "[d]uring the two years preceding the date of its opinion to Sterling, KBW has received compensation for investment banking services from Sterling." This information is material to a shareholder's understanding of actual/potential conflicts of interest that could hinder KBW's ability to objectively assess the fairness of the Proposed Transaction. This information would demonstrate the extent of the ongoing relationship between Sterling and KBW and is thus material to a determination regarding potential conflicts of interest and, without it, the Registration Statement is materially misleading.

41. Similarly, the Registration Statement fails to disclose the amount of compensation to be received by BofA Merrill Lynch, one of Provident's financial advisors, that is contingent upon completion of the Proposed Transaction. This information is material to a shareholder's ability to determine whether BofA Merrill Lynch is objectively able to assess the fairness of the Proposed Transaction, given that such amount to be earned by BofA Merrill Lynch may affect its impartiality in rendering the fairness opinion rendered to approve the Proposed Transaction. The Registration Statement similarly fails to disclose whether BofA Merrill Lynch has provided services to Sterling in the prior two years and whether it received compensation for any such services. This information is material as described above in ¶40. Moreover, the Registration Statement fails to disclose how much compensation BofA Merrill Lynch expects to receive for its participation in arranging for financing in connection with the Proposed Transaction and when in the negotiation process it was determined that BofA Merrill Lynch would provide these additional services for which it will receive significant compensation. All of this information is material to a shareholder's determination on the issue of whether BofA Merrill Lynch was able

to objectively assess the Proposed Transaction or if its recommendation on the Proposed Transaction was affected by the possibility of additional significant fees in the future as a result of the financing arrangement. Without the disclosure of this information, the Registration Statement is materially misleading.

42.     Additionally, the Registration Statement is materially false and misleading with respect to the financial analyses provided by Sterling's financial advisors, KBW and J.P. Morgan Securities LLC ("JP Morgan"), and Provident's financial advisors, BofA Merrill Lynch and Credit Suisse Securities (USA) LLC ("Credit Suisse"), as set forth below:

(a)     Regarding JP Morgan's Trading Multiples Analysis for each of Sterling and Provident, the Registration Statement fails to disclose the Price/2013 EPS multiples and the Price/TBV multiples for each of the selected companies. The Registration Statement simply provides a median multiple for the selected companies. Summary statistics such as these fail to provide the necessary context that would allow shareholders to determine if the selected companies are appropriate comparative companies for the analyses and how each selected company compares to Sterling or Provident. Indeed, shareholders cannot determine whether any of the selected companies are potential "outliers" that inappropriately skew the analyses without disclosure of this material information;

(b)     The Registration Statement further fails to disclose the mechanics and purpose of regressing 2014 Estimated Return on Average Tangible Common Equity ("ROATCE"), who in fact performed the estimates of the 2014 ROATCE and how JP Morgan chose to apply the resulting 2014 Estimated ROATCE ranges to the resultant regression equations. Without this information, shareholders will be unable to determine the purpose of regressing the estimates, where those estimates were derived from and, ultimately, whether the

resulting equity values per share of Sterling's and Provident's common stock is appropriate. This is material to an understanding regarding the efficacy of these analyses;

(c)     With respect to JP Morgan's Value Creation Analysis, the Registration Statement fails to disclose the purpose of the analysis and what effect the calculated accretion of 46% to Sterling stockholders will truly have on their holdings.  Without this information, Sterling shareholders are unable to determine how the stated accretion percentage will affect their holdings;

(d)     Regarding the Sterling Dividend Discount Analysis performed by JP Morgan, the Registration Statement fails to disclose the nature of the management-approved extrapolations for earnings and assets, long-term earnings growth and long-term asset growth.  The Registration Statement discloses neither the necessity of the extrapolations, why they were performed, how they were performed nor how the extrapolations differed from the projected 6.50% annual long-term earnings growth and 5.0% annual long-term asset growth.  Similarly, with respect to JP Morgan's Provident Dividend Discount Analysis, the Registration Statement fails to disclose the nature of the management-approved earnings growth extrapolation (and how that differed from 5% annual earnings growth) and the nature of the management-approved asset growth extrapolations.  While the Registration Statement disclosed how the management-approved asset growth extrapolation differed from management's assumption, it did not provide any such information about the other extrapolations.  This omitted information represent key inputs to the analyses, without which shareholders will be unable to determine whether the implied common stock values produced by the analyses are reliable;

(e)     The Registration Statement fails to disclose, in KBW's Selected Companies Analysis, the financial information, pro forma information, market performance

13

information and pro forma market performance information for each of the selected companies. Without this information, shareholders do not have the necessary context that would allow them to determine if the selected companies are appropriate for the analysis and how each selected company compares to Sterling and Provident.  Without the omitted information, shareholders cannot determine whether any of the selected companies are potential "outliers" that inappropriately skew the analysis;

(f)     Regarding KBW's Selected Transactions Analysis, the Registration Statement fails to disclose the Price/TBV and Price/LTM EPS multiples and the Core Deposit Premium and One-Day Market Premium for each of the selected transactions.  As is the case above,  this omitted information which constitutes key inputs to the analysis, is material because without such multiples and premiums, shareholders do not have the necessary context that would allow them to determine if the selected transactions are appropriate for the analysis and how each selected transaction compares to the Proposed Transaction;

(g)     The Registration Statement fails to disclose, in KBW's Pro Forma Financial Impact Analysis, the earnings estimates provided by each of Provident's and Sterling's management and does not quantify the accretive effect that the Proposed Transaction is expected to have on Provident's estimated earnings per share in 2014 and 2015, nor does the Registration Statement quantify the dilutive effect the Proposed Transaction is expected to have on Provident's tangible book value per share.  The omission of this information is material because without it, a shareholder cannot properly determine whether the consideration offered in the Proposed Transaction is sufficient;

(h)     With respect to the Discounted Cash Flow Analysis ("DCF") performed by KBW relating to each of Sterling and Provident, the Registration Statement fails to disclose

14

the present value of projected cash flows to Sterling and Provident shareholders from 2014 to 2018, the projected earnings for 2019 and also fails to disclose the balance sheet growth it assumes for each company. These assumptions have a material effect on the outcome of the DCF and, without disclosure of this information, shareholders are unable to determine if the analyses properly measure the companies' value and are thus without the information necessary to adequately determine whether to approve the Proposed Transaction;

(i)     The Registration Statement fails to disclose, in BofA Merrill Lynch's Selected Publicly Traded Companies Analyses, the multiples of calendar years 2013 and 2014 estimated EPS and tangible book value per share as of December 31, 2012 for each of the selected companies. The omission of this information deprives shareholders of the necessary context that would allow them to determine if the selected companies are appropriate for the analyses and how each selected company compares to Sterling or Provident. Without the omitted information, shareholders cannot determine whether any of the selected companies are potentially outliers that inappropriately skew the analyses;

(j)     Regarding Credit Suisse's Selected Publicly Traded Companies Analyses, which is exactly the same as BofA Merrill Lynch's Selected Publicly Traded Companies Analyses, the Registration Statement fails to disclose the multiples of calendar years 2013 and 2014 estimated earnings per share and tangible book value per share as of December 31, 2012 for each of the selected companies. Just as above, the omission of this information deprives shareholders of the necessary context that would allow them to determine if the selected companies are appropriate for the analyses and how each selected company compares to Sterling or Provident. Without the omitted information, shareholders cannot determine whether any of the selected companies are potentially outliers that inappropriately skew the analyses; and

(k)     In the Dividend Discount Analyses performed by Credit Suisse, the Registration Statement fails to disclose the identity and nature of the "certain other forecasts with respect to earnings per share long-term growth rate and certain other forecasts with respect to tangible assets" that it relied upon when performing the analyses.   The omission of this information is material because without it, a shareholder cannot properly determine whether the consideration offered in the Proposed Transaction is sufficient and whether Credit Suisse was properly relying on these projections;

43.     Moreover, the Registration Statement fails to disclose the projections provided by Sterling and Provident management that were relied upon by the financial advisors when rendering their opinions.   While the Registration Statement refers to "internal financial analyses and forecasts prepared by their respective managements" and forecasts with respect to tangible assets, the projections are not disclosed to shareholders.   The omission of this information renders the Registration Statement materially misleading because these projections are the most important information for shareholders, and were relied upon by the companies and financial advisors in entering into the Proposed Transaction.   Without the disclosure of these projections, Sterling shareholders cannot properly determine whether the Proposed Transaction is in their best interests.   Similarly, the Registration Statement fails to disclose management's free cash flow projections.   The omission of this information further renders the Registration Statement materially misleading because it leaves shareholders without management's best estimate of Sterling's future cash flows and, similarly, Sterling's future value.   As a result, Sterling shareholders are without the information necessary to properly evaluate the fairness of the Proposed Transaction.

44.     Absent this material information, Plaintiff and other Sterling shareholders will not have all the necessary information to make a decision regarding whether to vote their shares in favor of the Proposed Transaction.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLASS REPRESENTATION ALLEGATIONS

45.     Plaintiff brings Count III on his own behalf and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all stockholders of the Company (except the defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants) and their successors in interest, who are or will be threatened with injury arising from defendants' actions as more fully described herein (the "Class").

46.     This action is properly maintainable as a class action.

47.     The Class is so numerous that joinder of all members is impracticable.  As of April 3, 2013, the Company had 30,955,796 shares of common stock outstanding, owned by thousands of shareholders located throughout the country.

48.     There are questions of law and fact which are common to the Class including, *inter alia*, the following:

(a)     whether Defendants breached fiduciary duties to Sterling stockholders;

(b)     whether Defendants failed to disclose material information to Sterling's common stockholders in the Registration Statement; and

(c)     whether the Class is entitled to injunctive relief or damages as a result of the wrongful conduct committed by Defendants.

17

49.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  The claims of the Plaintiff are typical of the claims of other members of the Class as set forth in Rule 23, and Plaintiff has the same interests as the other members the Class.  Plaintiff will fairly and adequately represent the Class.

50.     Plaintiff envisions no unusual difficulty in the management of this action.

51.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members or substantially impair or impede their ability to protect their interests.

52.     Defendants have acted in a manner which affects Plaintiff and all members of the Class thereby making injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole appropriate.

## FIRST CAUSE OF ACTION

### On Behalf of Plaintiff Individually for Violations of Section 14(a) of the Exchange Act (Against the Company and the Individual Defendants)

53.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     Defendants have issued the Registration Statement with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement which fails to provide critical

information regarding the future value of the Company, the key inputs and assumptions of the financial analyses and the process leading up to the Proposed Transaction. In so doing, the Defendants omitted and/or misrepresented information that is material to a shareholder's decision regarding whether to vote in favor of the Proposed Transaction. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of §14(a).

56. Rule 14a-9, promulgated by the SEC pursuant to §14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

57. The Registration Statement violates §14(a) and Rule 14a-9 because it omits the material information set forth above. In the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.

58. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

## SECOND CAUSE OF ACTION

### On Behalf of Plaintiff Individually for Violations of Section 20(a) of the Exchange Act (Against the Individual Defendants)

59. Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

60.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.    The Individual Defendants acted as controlling persons of Sterling within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Sterling, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

62.    Each of the Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous rsecommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

64.    In addition, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and

considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.   By virtue of the foregoing, the Individual Defendants have violated §20(a) of the 1934 Act.

66.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

67.   Plaintiff has no adequate remedy at law.

### THIRD CAUSE OF ACTION

**Class Claim for Breach of Fiduciary Duties and
Aiding and Abetting Against All Defendants**

68.   Plaintiff repeats and realleges each allegation set forth herein.

69.   Plaintiff brings this claim individually and on behalf of the Class.

70.   The Individual Defendants, aided and abetted by Sterling and Provident, have knowingly or recklessly, and in bad faith, violated their fiduciary duties of care, loyalty, independence and candor owed to the public shareholders of Sterling and acted to put their personal interests ahead of the interests of the Class.

71.   By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, knowingly or recklessly, and in bad faith, are attempting to unfairly deprive Plaintiff and all other Sterling stockholders of the true value of their investment in Sterling.

72.     The Individual Defendants have knowingly or recklessly, and in bad faith, violated their fiduciary duties by entering into the Proposed Transaction without regard to its fairness and without adequately shopping the Company to ensure Sterling shareholders would receive a fair value for the shares.  Sterling and Provident aided and abetted the Individual Defendants' breaches of fiduciary duties owed to the Class.

73.     Because the Individual Defendants dominate and control the business and corporate affairs of Sterling, and are in possession of private corporate information concerning Sterling's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the Class.

74.     Sterling and Provident aided and abetted the breaches of fiduciary duty described herein.  In so doing, Sterling and Provident knew or should have known that the Individual Defendants had breached fiduciary duties, including securing their financial future in connection with the Proposed Transaction, to the detriment of Sterling's public shareholders.  Sterling and Provident, with such knowledge, rendered substantial assistance to ensure that the Merger Agreement was executed, which contained specific provisions to not only rebuff other bidders, but also contemplated the continued participation of certain of the Individual Defendants in the combined company.

75.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have knowingly or recklessly, and in bad faith, failed to exercise the care and good faith required.

76.     As a result of the actions of Defendants, Plaintiff and the Class have been and will be damaged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, individually on Counts I and II and on behalf of himself and the Class with respect to Count III and against defendants as follows:

A.     Declaring that Defendants have violated their duties pursuant to Counts I and II with respect to Plaintiff;

B.     Declaring this action to be a proper class action with respect to Count III and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;

C.     Enjoining Defendants, their agents, counsel and others acting on their behalf or in concert with them from consummating the Proposed Transaction unless and until the Company discloses all material information to Sterling's shareholders;

D.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees; and

F.     Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 5, 2013

**ABBEY SPANIER LLP**

By: _____
     Nancy Kaboolian
     nkaboolian@abbeyspanier.com
     212 East 39th Street
     New York, NY 10016
     Tel: (212) 889-3700
     Fax: (212) 684-5191

**KOMLOSSY LAW, P.A.**
Emily C. Komlossy
eck@komlossylaw.com

23

Ross A. Appel
raa@komlossylaw.com
2131 Hollywood Boulevard, Suite #408
Hollywood, FL  33020
Tel: (954) 842-2021
Fax: (954) 416-6223